

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re:     Edward Woojin Park, Debtor.<br><br>Stewart Title Guaranty Company,<br><br>                                  Plaintiff,<br><br>        v.<br><br>Edward Woojin Park,<br><br>                                  Defendant. | Case No.: 2:20-bk-14414-ER<br>Adv. No.: 2:20-ap-01194-ER<br><br>**MEMORANDUM OF DECISION FINDING THAT STEWART TITLE GUARANTY COMPANY IS ENTITLED TO THE ENTRY OF SUMMARY JUDGMENT IN ITS FAVOR**<br><br>[No hearing required pursuant to Federal Rule of Civil Procedure 78(b) and Local Bankruptcy Rule 9013-1(j)(3)] |

Before the Court is the *Motion for Summary Judgment Pursuant to FRCP 56* [Doc. No. 40] (the "MSJ") filed by Stewart Title Guaranty Company ("Stewart Title").[1] For the reasons set forth below, the Court finds that the indebtedness established by the State Court Judgment

---

[1] The Court reviewed the following papers in adjudicating this matter:
1) Notice of Hearing on Motion and Motion for Summary Judgment Pursuant to FRCP 56 and LBR 7056-1 [Doc. No. 40] (the "MSJ");
    a) Proof of Service of Motion [Doc. No. 41];
    b) Notice of Lodgment of Proposed Summary Judgment [Doc. No. 42];
2) Order Requiring Stewart Title to Submit Additional Evidence in Support of its Motion for Summary Judgment [Doc. No. 48];
3) Supplemental Declaration of Lawrence J. Poteet in Support of Motion by Plaintiff for Summary Judgment [Doc. No. 50]; and
4) Supplemental Declaration of Lawrence J. Poteet Re: No Opposition by Defendant to Motion by Plaintiff for Summary Judgment [Doc. No. 51].

(defined below) is excepted from Park's discharge pursuant to § 523(a)(2)(A) and (a)(6), and will enter summary judgment in favor of Stewart Title.

## I. Background

On May 13, 2020 (the "Petition Date"), Park filed a voluntary Chapter 7 petition. On August 20, 2020, Stewart Title filed a dischargeability action against Park, asserting claims under § 523(a)(2), (a)(4), and (a)(6) (the "Complaint"). After conducting mediation, the parties reached a settlement, but litigation continued when Park failed to timely make the lump sum payment required by the settlement.[2] On July 1, 2021, the Court authorized Park's counsel, Jaenam Coe, to withdraw from representation.[3]

Prior to the Petition Date, on February 26, 2013, a default judgment in the amount of $278,052.60, on causes of action for fraud, constructive fraud, and indemnity, was entered against Park and in favor of Stewart Title's predecessor-in-interest in the State Court (the "State Court Judgment," and the action giving rise to the State Court Judgment, the "State Court Action"). Stewart Title moves for summary judgment, arguing that Park is precluded from contesting the non-dischargeability of the State Court Judgment. In the alternative, Stewart Title argues that if issue preclusion does not apply, the undisputed facts establish that it is entitled to summary judgment in its favor.

After conducting an initial hearing on the MSJ, the Court ordered Stewart Title to submit additional evidence with respect to whether Park had been personally served in the State Court Action or had actual knowledge of the litigation. The Court provided Park an opportunity to respond to Stewart Title's additional evidence, but Park failed to submit any response.[4]

## II. Findings and Conclusions

For the reasons set forth below, the Court finds that the State Court Judgment precludes Park from contesting his liability under either § 523(a)(2)(A) or (a)(6). Consequently, Stewart Title is entitled to entry of summary judgment in its favor on its claims under § 523(a)(2)(A) and (a)(6).

### A. The State Court Judgment

On March 15, 2012, Stewart Title's predecessor-in-interest, Bency 26, LLC ("Bency") filed a First Amended Cross-Complaint (the "State Court Cross-Complaint") against Park and others. On February 27, 2013, the State Court entered default judgment in the amount of $278,052.60 against Park on Bency's third cause of action for fraud, fourth cause of action for constructive fraud, and seventh cause of action for indemnity (the "State Court Judgment").

The allegations in the State Court Cross-Complaint supporting entry of the State Court Judgment were as follows:

1) Bency is a California limited liability company formed for the purpose of investing in real property. State Court Cross-Complaint at ¶¶ 1 and 15. Through a friend, the principals of Bency were introduced to Park, a real estate broker. *Id.* at ¶ 16. Park informed Bency's principal that he represented investors who were interested in

---

[2] Doc. No. 30.
[3] Doc. No. 44.
[4] In addition to failing to submit any response to Stewart Title's additional evidence, Park did not submit any written opposition to the MSJ.

    purchasing several parcels of real property. *Id.* Park represented to Bency's principal that in order to purchase this property, the investors that he represented needed to obtain a short term loan in the amount of $200,000. *Id.*

2) Park further represented to Bency's principal that if Bency agreed to loan the sum of $200,000 to the investors that Park represented, that the loan would be secured by a first deed of trust against property located at 915 and 925 North Third Avenue, Upland, California (the "Property"), and that the first deed of trust would be in the face amount of $245,000. *Id.* at ¶ 17. The additional $45,000 was to represent interest on the $200,000 loan. *Id.*

3) After confirming that the Property was worth more than $200,000, Bency's principal decided to cause Bency to proceed with the transaction. *Id.* at ¶ 18. An escrow was opened at United Escrow Company ("United Escrow"). *Id.*

4) In furtherance of the transaction, Joyce Kim ("Kim"), the escrow officer at United Escrow, prepared a set of Refinance Escrow Instructions. *Id.* at Ex. B. The Refinance Escrow Instructions called for Bency to make a loan to Gerald R. Hays and Marilyn Hays in the amount of $245,000, to be secured by a first deed of trust against the Property. *Id.*

5) On August 31, 2011, Kim received a "Letter of Demand/Invoice" which bore signatures purporting to be those of Mr. and Mrs. Hays. *Id.* at ¶ 21 and Ex. E. The "Letter of Demand/Invoice" instructed escrow to pay $10,000 from the loan proceeds to Park as a "referral fee." *Id.*

6) On September 9, 2011, a Promissory Note and Deed of Trust bearing signatures purporting to be those of Mr. and Mrs. Hays was executed in favor of Bency in the amount of $245,000. *Id.* at ¶ 22. Escrow closed on September 13, 2011, after Bency had deposited $200,000 into escrow. *Id.* at ¶ 23.

Bency filed the State Court Cross-Complaint in response to a Complaint filed by Mr. and Mrs. Hays which contended, among other things, that their signatures on the Promissory Note and Deed of Trust had been forged. The Complaint filed by Mr. and Mrs. Hays sought, among other relief, to set aside and cancel the Deed of Trust in favor of Bency. Pursuant to Bency's title insurance policy (the "Title Insurance Policy"), Stewart Title assumed the defense of the action and filed the State Court Cross-Complaint.

    The State Court Cross-Complaint alleged that Park committed fraud by causing the Hays' signatures to be forged on the Promissory Note and Deed of Trust. The State Court Cross-Complaint also asserted claims for constructive fraud and indemnity against Park.

**B. Stewart Title is Entitled to Entry of Summary Judgment on its Claims Under § 523(a)(2)(A) and (a)(6)**

    Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law." Civil Rule 56 (made applicable to these proceedings by Bankruptcy Rule 7056). The moving party has the burden of establishing the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is 'material' only if it might affect the outcome of the case[.]" *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir.

2014). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The court is "required to view all facts and draw all reasonable inferences in favor of the nonmoving party" when reviewing the Motion. *Brosseau v. Haugen*, 543 U.S. 194, 195 n.2 (2004).

To determine the preclusive effect of an existing state court judgment, the "bankruptcy court must apply the forum state's law of issue preclusion." *Plyam v. Precision Development, LLC (In re Plyam)*, 530 B.R. 456, 462 (9th Cir. BAP 2015). California preclusion law requires that:

1) The issue sought to be precluded from relitigation is identical to that decided in a former proceeding;
2) The issue was actually litigated in the former proceeding;
3) The issue was necessarily decided in the former proceeding;
4) The decision in the former proceeding is final and on the merits; and
5) The party against whom preclusion is sought was the same as, or in privity with, the party to the former proceeding.

*Lucido v. Super. Ct.*, 795 P.2d 1223, 1225 (Cal. 1990).

Even if all five elements are satisfied, preclusion is appropriate "only if application of preclusion furthers the public policies underlying the doctrine." *Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1245 (9th Cir. 2001) (citing *Lucido v. Super. Ct.*, 795 P.2d at 1225). In California, the public policies supporting preclusion are "preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation." *Lucido*, 795 P.2d at 1227.

For the reasons set forth below, the Court finds that the State Court Judgment precludes Park from contesting the non-dischargeability of the indebtedness established by that judgment under either § 523(a)(2)(A) or (a)(6).

### *Element 1: The Issues Are Identical*
Stewart Title's § 523(a)(2)(A) Claim

Section 523(a)(2)(A) provides: "A discharge under section 727 … of this title does not discharge an individual debtor from any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." To except debts from discharge, a creditor has the burden of proof under the preponderance of the evidence standard. *Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654 (1991).

To prevail on a § 523(a)(2)(A) claim on the grounds of false pretenses or false representation, a creditor must prove that:

1) the debtor made the representations;
2) that at the time he knew they were false;
3) that he made them with the intention and purpose of deceiving the creditor;
4) that the creditor relied on such representations; and
5) that the creditor sustained the alleged loss and damage as the proximate result of the misrepresentations having been made.

*Ghomeshi v. Sabban (In re Sabban)*, 600 F.3d 1219, 1222 (9th Cir. 2010).

The issues are identical with respect to Stewart Title's § 523(a)(2)(A) claim. Specifically, in order to enter default judgment in favor of Stewart Title's predecessor-in-interest Bency on its cause of action for fraud, the State Court would have been required to find, as alleged in the State Court Cross-Complaint, all of the following:

1) Park represented to Bency that the proceeds of the loan transaction would be secured by the Property.
2) At the time Park made these representations, he knew they were false, given that the signatures on the Promissory Note, Deed of Trust, and related loan documents which purported to be those of Mr. and Mrs. Hays had been falsified.
3) The representation was made for the purpose of deceiving Bency, in furtherance of Park's scheme to induce Bency to loan the funds so that Park could fraudulently obtain the referral fee.
4) Bency relied on Park's representations, as it would not have made the loan had it known that the documents purporting to secure the loan had been falsified.
5) Bency (and its successor-in-interest, Stewart Title) sustained the loss as the proximate result of the misrepresentations having been made, given that it was only as a result of the losses caused by Park's false representations that Stewart Title was required to make payments in connection with the Title Insurance Policy.

The foregoing findings satisfy all the elements necessary to establish dischargeability under § 523(a)(2)(A).

Stewart Title's § 523(a)(6) Claim

"Section 523(a)(6) excepts from discharge debts arising from a debtor's 'willful and malicious' injury to another person or to the property of another. The 'willful' and "malicious' requirements are conjunctive and subject to separate analysis." *Plyam v. Precision Development, LLC (In re Plyam)*, 530 B.R. 456, 463 (9th Cir. B.A.P. 2015) (internal citations omitted).

An injury is "willful" when "a debtor harbors 'either subjective intent to harm, or a subjective belief that harm is substantially certain.' The injury must be deliberate or intentional, 'not merely a deliberate or intentional act that leads to injury.'" *Id.* at 463 (internal citations omitted). An injury is "malicious" if it "involves '(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse.'" *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1146–47 (9th Cir. 2002) (internal citations omitted).

In addition, the injury-producing conduct must be tortious in order to be excepted from discharge under §523(a)(6). *Lockerby v. Sierra*, 535 F.3d 1038, 1040 (9th Cir. 2008). "[C]onduct is not tortious under § 523(a)(6) simply because injury is intended or 'substantially likely to occur,' but rather is only tortious if it constitutes a tort under state law." *Id.* at 1041.

The issues are likewise identical with respect to Stewart Title's § 523(a)(6) claim. The Court notes that in evaluating Park's state of mind, Park "is charged with the knowledge of the natural consequences of [his] actions." *Ormsby v. First Am. Title Co. (In re Ormsby)*, 591 F.3d 1199, 1206 (9th Cir. 2010); *see also Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1146 n.6 (9th Cir. 2002) ("In addition to what a debtor may admit to knowing, the bankruptcy court may consider

circumstantial evidence that tends to establish what the debtor must have actually known when taking the injury-producing action.").

To enter the State Court Judgment, the State Court would have been required to find that Park participated in a conspiracy involving the presentation of falsified documents to United Escrow for the purpose of fraudulently inducing Bency to extend the loan. In taking such actions, Park either had a subjective intent to harm Bency, or held that a subjective belief that harm to Bency was substantially certain.

Park's actions were also malicious. Use of the falsified documents to procure the loan transaction was wrongful, intentional, caused injury to Bency, and was done without just cause or excuse. Finally, Park's fraudulent procurement of the loan transaction was tortious under California law.

*Element 2: The Issues Were Actually Litigated and Necessarily Decided*

"[T]he mere fact that a plaintiff 'obtained a judgment by default does not, in itself, foreclose the possibility that the resolution of some issues in the litigation would later have preclusive effect.'" *Baldwin v. Kilpatrick (In re Baldwin)*, 249 F.3d 912, 918 (9th Cir. 2001) (internal citations omitted). Collateral estoppel may be applied provided the defendant "'ha[d] been personally served with [a] summons or ha[d] actual knowledge of the existence of the litigation.'" *Id.* at 919.

The complaint filed by Mr. and Mrs. Hays that initiated the State Court Action was personally served upon Park on November 17, 2011, by California registered process server Jordan Meyers.[5] The State Court Cross-Complaint that was subsequently filed in the State Court Action was delivered to Teresa Park, a co-occupant who resides at 13361 Fern Pine Circle, Cerritos, CA 90730 (the "Fern Pine Address"). Park listed the Fern Pine Address as his home address on his bankruptcy schedules. In responses to interrogatories in the instant action, Park testified that he resided at the Fern Pine Address at the time the State Court Cross-Complaint was delivered to co-occupant Teresa Park.[6]

The Court finds that the personal service of the initial complaint upon Park, followed by delivery of the State Court Cross-Complaint to a co-occupant at Park's residence, are sufficient to establish Park's actual knowledge of the existence of the litigation. Element 1 is satisfied.

*Element 3: The Issues Were Necessarily Decided*

As explained in the discussion of Element 1, the identity of the issues, the State Court could not have entered default judgment in Stewart Title's favor on its cause of action for fraud without finding that all the elements of § 523(a)(2)(A) and (a)(6) had been established. Element 3 is satisfied.

*Element 4: The State Court Judgment Was Final and On the Merits*

The State Court Judgment is final as to Park. For issue preclusion purposes, the State Court Judgment qualifies as a decision on the merits because, as discussed above, Park was aware of and had an opportunity to participate in the litigation. Element 4 is satisfied.

---

[5] *See* Doc. No. 50, Ex. 1 (proof of personal service upon Park).
[6] *See* Supplemental Decl. of Lawrence J. Poteet [Doc. No. 50] at ¶ 17.

*Element 5: The Party Against Whom Preclusion is Sought is the Same as the Party to the State Court Proceeding*

There is no dispute that Park, the defendant in the instant action, is the same person against whom Stewart Title's predecessor-in-interest obtained the State Court Judgment. Element 5 is satisfied.

*Public Policy Supports Preclusion*

To accord the State Court Judgment preclusive effect, the Court is also required to find that public policy supports applying California preclusion law. Such a finding is appropriate here. Applying preclusion law preserves the integrity of the judicial system by giving full effect to judgments that have been obtained after both parties were afforded full opportunity to litigate the matter. Preclusion promotes judicial economy by obviating the need for a duplicative and unnecessary trial. The avoidance of an unnecessary trial promotes the public policy against vexatious litigation.

## C. Stewart Title is Not Entitled to Entry of Summary Judgment on its Claim Under § 523(a)(4)

Section 523(a)(4) excepts from discharge "any debt for fraud or defalcation while acting in a fiduciary capacity." "To prevail on a nondischargeability claim under § 523(a)(4) the plaintiff must prove not only the debtor's fraud or defalcation, but also that the debtor was acting in a fiduciary capacity when the debtor committed the fraud or defalcation." *Honkanen v. Hopper (In re Honkanen)*, 446 B.R. 373, 378 (B.A.P. 9th Cir. 2011).

Federal bankruptcy law determines whether a fiduciary relationship exists within the meaning of § 523(a)(4). *Cal-Micro, Inc. v. Cantrell (In re Cantrell)*, 329 F.3d 1119, 1125 (9th Cir. 2003). For purposes of § 523(a)(4), the fiduciary relationship "must be one arising from an express or technical trust that was imposed before and without reference to the wrongdoing that caused the debt." *Lewis v. Scott (In re Lewis)*, 97 F.3d 1182, 1185 (9th Cir. 1996). State law determines whether the requisite trust relationship exists. *Mele v. Mele (In re Mele)*, 501 B.R. 357, 363 (B.A.P. 9th Cir. 2013).

Stewart Title's § 523(a)(4) claim fails because it has not established that an express or technical trust existed between Bency (Stewart Title's predecessor-in-interest) and Park. In *In re Honkanen*, the court found that a real estate broker was not a fiduciary for purposes of § 523(a)(4). Therefore, Park's status as Bency's real estate broker cannot establish the fiduciary relationship necessary to make debts arising from that fiduciary relationship dischargeable under § 523(a)(4).

## III. Conclusion

Based upon the foregoing, the Court finds the State Court Judgment is excepted from Park's discharge pursuant § 523(a)(2)(A) and (a)(6). The Court will enter judgment consistent with this Memorandum of Decision.

###

Date: December 29, 2021

Ernest M. Robles
United States Bankruptcy Judge